|                                           |   |                              |
|-------------------------------------------|---|------------------------------|
| DAVID SCOTT FISKE                         | ) |                              |
|                                           | ) |                              |
|     Plaintiff,        | ) |                              |
|                                           | ) |                              |
| v.                                        | ) | CIVIL ACTION                 |
|                                           | ) | NO. 10-40059-TSH             |
| MICHAEL J. ASTRUE,                        | ) |                              |
| As Commissioner                           | ) |                              |
| Social Security Administration.           | ) |                              |
|                                           | ) |                              |
|     Defendant.        | ) |                              |

## MEMORANDUM OF DECISION AND ORDER ON DEFENDANT'S MOTION TO AFFIRM DECISION OF THE COMMISSIONER
March 27, 2012

**Hillman, M.J.**

### Nature of the Proceeding

This is an action for judicial review of a final decision by the Commissioner of the Social Security Administration ("Commissioner") regarding an individual's entitlement to Social Security Income ("SSI"). The Commissioner moves for this Court to enter an order affirming the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c)(3). (Docket Nos. 17). The Plaintiff opposed the motion and filed a response asking that the Court overturn the Commissioner's claim. (Docket No. 19).

The parties have consented to this court's jurisdiction (Docket No. 7). *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. For the following reasons, the Commissioner's motion is denied, and the case is remanded, consistent with the terms set forth in this Memorandum.

## Nature of the Case

This is an appeal from the final decision by the Commissioner of the Social Security Administration denying Plaintiff, David Scott Fiske's ("Fiske" or "Plaintiff") application for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits. The Plaintiff contends that the Administrative Law Judge ("ALJ") did not properly determine whether Plaintiff's respiratory problems met a Listing Impairment; did not properly assess his credibility; did not properly assess the medical opinions in the administrative record; and that the ALJ did not properly rely on the testimony of the Vocational Expert ("VE").

## Procedural History

On December 28, 2007, the Plaintiff filed an application under Title II of the Social Security Act, requesting disability and disability insurance based on his inability to work beginning January 18, 2006. (*Transcript* at p. 83, *hereinafter* "Tr.").[1] Following a denial of benefits by the Commissioner, the Plaintiff requested a hearing before the Administrative Law Judge (ALJ) on November 12, 2008. (Tr. 54). The hearing, held September 3, 2009, affirmed the decision of the Commissioner. (Tr. 18). This decision was again appealed to the Disability Review Board ("DRB"), who subsequently affirmed the lower decisions on January 26, 2010. (Tr. 1). The Plaintiff brought suit under 42 U.S.C. §§ 405(g) and 1383(c) to overturn the rulings on the grounds that the ALJ failed to provide sufficient reasoning in justifying his decision under step three of the five-step evaluation process of Social Security benefits, as well as failed to give a reason for denying the testimony and reports filed by the Plaintiff and one of his treating doctors, Dr. Jordan Scott, in reaching a final decision. (Docket No. 1, ¶13).

---

[1] A transcript of the official record has been filed under seal with the court, (Docket No. 11)(*Tr.*).

**Background**

1. *Educational and Occupational History*

Plaintiff David Scott Fiske was born in 1966 and lived, for the portion relevant to the claim, in Hubbardston, Massachusetts. (Tr. 23). Plaintiff dropped out of high school while in the 12th grade to join the work force, and subsequently completed his GED in 1985. *Id.* Plaintiff is unmarried and lives alone. (Tr. 251)

Plaintiff worked during the period prior to his alleged disability as an oil truck driver and deliveryman for Pietro Holdings Incorporated. His employment with them ended on January 17, 2006. (Tr. 23). During the course of employment, Plaintiff would work for six months out of the year and was unemployed and collecting benefits during the warmer six months of the year, when deliveries were slow. *Id.* As a result of the alleged disability, Plaintiff has been unable to work since January 18, 2006, other than a brief stint in November 2007 that lasted approximately two weeks. *Id.*

2. *Medical History*

After he left his job in January of 2006, Plaintiff was referred to Neurologist Dr. Lan Qin with complaints of asthma making him feel fatigued after four hours of activity. (Tr. 169). As part of the exam, Plaintiff claimed no difficulty climbing stairs and felt "fine in general." *Id.* at 169-170. Dr. Qin diagnosed his condition as stable, and cited a possible metabolic or toxic etiology. *Id.* at 170. Following this initial visit, a sleep study in November of that year showed no clinically significant respiratory disturbance. *Id.* at 174.

In February 2007, Plaintiff was referred to Dr. Odalys Croteau, a pulmonologist, for difficult-to-control asthma. (Tr. 251). Plaintiff reported his breathing was terrible; he had a chronic cough with clear sputum, chronic chest tightness, wheeze, and dyspnea at rest and with activity.1 (Tr. 251-252). The exam performed by the doctor revealed scattered wheeze and no

rhonchi, and Dr. Croteau advised a continued inhaler therapy and use of Claritin. *Id.* at 253. After two follow-up appointments in late-February and May of 2007, Dr. Croteau diagnosed Plaintiff as allergic to various grasses and dogs. *Id.* at 257. In addition, an x-ray showed changes common to a patient with chronic obstructive pulmonary disease (COPD). *Id.* at 258. In the second visit, Dr. Croteau suggested a continued asthma regiment, recommended that the Plaintiff pursue Xolair injections, continue taking his medications Advair, Spiriva, and Xopenex rescue inhaler as needed, but to discontinue another type of inhaler. (Tr. 249). He also prescribed Chantix, a drug to help him quit his smoking habit. *Id.* at 256. This regiment continued for two subsequent check-ups in August and December 2007. *Id*. at 242.

In June of 2007, Dr. Croteau recommended Plaintiff to Dr. Jordan Scott, a specialist in Allergy and Immunology. (Tr. 193). Dr. Scott found Plaintiff's lung age to be that of an 88 year old, and his FEV1 test scored a 2.22.[2] *Id*. Dr. Scott diagnosed Plaintiff with severe asthma induced by allergies, noted his dog allergies, and recommended a steroid regimen. *Id*.

In January of 2008, Dr. Croteau again examined the Plaintiff and administered a Pulmonary Functions Test which showed moderate airway obstruction and severe small airway disease (FEV1 showing 2.34 pre-dilator and 2.72 post-dilator). (Tr. 240). The doctor diagnosed Plaintiff with asthma and COPD, as well as allergic rhinitis. *Id.* A non-examining DDS advisor confirmed the diagnosis, and also found the patient to be credible, as was noted by the Plaintiff's family physician in a check up in February of 2008. (Tr. 348); see also Tr. 366.

In September 2007, Plaintiff injured his left rib cage while dragging a rake with his lawn tractor. (Tr. 207). He reported that his asthma had improved with Xolair injections. (Tr. 207). In

---

[2] The FEV1 is a spirometry test that tests the volume exhaled during the first second of a forced expiratory maneuver started from the level of total lung capacity. It is the most frequently used index for assessing airway obstruction, bronchoconstriction or bronchodilatation. FEV1 expressed as a percentage of the VC (vital capacity) of the lung is the standard index for assessing and quantifying airflow limitation.

October 2007, in a discharge note from physical therapy, Plaintiff was noted to have no difficulty with activities of daily living. (Tr. 214). During a medical examination that month, Plaintiff denied any concerns including chest pain, coughing, or shortness of breath. (Tr. 238). His lungs were clear to auscultation.7 (Tr. 238). He had mild expiratory wheezes but good air movement throughout his lungs. (Tr. 239). In December 2007, Plaintiff had slightly decreased lung sounds at the left base compared to the right, but otherwise was moving air well. (Tr. 232). He had no prolonged I-E ratio and no expiratory or inspiratory wheezes. 8 (Tr. 232). No rhonchi was heard. (Tr. 232). He reported that in the morning he had a bubble in his chest that was relieved when he coughed up phlegm (Tr. 232).

Dr. Croteau evaluated the Plaintiff in August 2007 who reported an acute flare-up of his chronic obstructive lung disease. (Tr. 244). After medication he was much improved. (Tr. 244). Physical examination showed scattered expiratory wheeze, but no rhonchi or rales. (Tr. 244). In December 2007, Dr. Croteau reported just a few weeks earlier Plaintiff had exacerbated his symptoms while at work. (Tr. 242). She reported his symptoms were better controlled by Xolair injections. (Tr. 242). Physical examination revealed scattered expiratory wheeze, but no rhonchi problem. (Tr. 242).

In January 2008, non-examining state agency physician Dr. Romany Hakeem Girgis reviewed the record and concluded Plaintiff had no severe asthma or COPD as long as he was compliant with his medications. (Tr. 348). In February 2008, Plaintiff reported to his primary care physician, Dr. Konstantin Deligiannidis, that he was diagnosed with emphysema/COPD and as a result Plaintiff claimed he stopped smoking. (Tr. 366).

In March, 2008, Dr. Gerald Kriedberg, a psychologist, examined the Plaintiff, who complained of depression and that he suffered an asthma attack any time he exerted himself

physically. (Tr. 376). Plaintiff had been treated for depression in the past, including January of 2006 and following the death of many friends in a short period of time over the past decade. *Id.* at 376-377. Plaintiff drank alcohol to cope with his depression, and claimed it was exacerbated by asthma. *Id.* at 376. Dr. Kriedberg diagnosed the Plaintiff with Depressive Disorder, alcohol abuse, severe and resistant Asthma, Emphysema, high blood pressure, and physical weakness and claimed such depression was brought on by health and financial woes. *Id.* at 377. In the report, Dr. Kriedberg recommended no mental health services. *Id.*

In March 2008, Dr. Scott found Plaintiff to have improved respiratory status and better sounding lungs, and ordered a continued regimen of steroids and antihistamines. (Tr. 379). Feeling better, Plaintiff went fishing in June of 2008; the following day after cleaning off his car of pollen, Plaintiff suffered a severe asthma attack (45 minutes) and was diagnosed by his family physician as having asthma exacerbation and lethargy. (Tr. 443). A June 2008 examination found Plaintiff's lungs had expiratory wheezes and rhonchi but also found he moved air very well. (Tr. 443). In July Plaintiff reported that his asthma was controlled by staying inside. (Tr. 442).

On July 3, 2008, Dr. Ram Upadhyay, a non-examining Doctor of Osteopathy, reviewed the evidence and advised Plaintiff he had no external limitations, but should avoid concentrated exposure to extreme cold/heat, humidity, and fumes, odors, dusts, gases, poor ventilation. (Tr. 416). At the end of July 2008, another Psychiatrist, Dr. Lawrence Langer, deemed Plaintiff to have not severe impairments, but substance addiction disorders resulting in mild limitation of daily activity. (Tr. 420).

From August to November of 2008, three doctors, Drs. Deligiannidis, Croteau, and Christiani, found the lung functions of Plaintiff to be good with the occasional wheeze, and

symptoms common to one who has asthma and COPD and is also a smoker. *See* Tr. 514; *see also* Tr. 435; Tr. 449. Multiple doctors suggested that Plaintiff stop smoking. *Id.*

In November, 2008, Dr. Scott claimed the Plaintiff had "severe allergic asthma and recommended he discontinue use of Xolair (and later aspirin), and has continued to have difficulty controlling his condition despite a variety of techniques." (Tr. 449). In his report, Dr. Scott was quoted as stating Plaintiff was "significantly, if not totally, disabled due to lung condition." *Id.*

A CT scan by radiologist Dr. Stephen Peck in February of 2009 revealed blebs in the both upper lung zones as well as hyperaeration. Dr. Croteau diagnosed the blebs as caused by tobacco abuse, and smoking exacerbated the chronic lung conditions of Plaintiff. (Tr. 482). Dr. Scott deferred to Dr. Croteau's analysis and treatment of emphysema. (Tr. 502). Throughout July of 2009, Plaintiff came to his family physician with diffusely wheezy, diminished breath sounds, yet denied any wheezing, chest pain, shortness of breath, or asthma exacerbations. (Tr. 517-521). The Plaintiff continued treatment for hypertension. *Id.* Dr. Scott, who discovered symptoms, including, shortness of breath, dyspnea, chest tightness, rhonchi, acute asthma, fatigue, and coughing, made the final examination prior to the case being filed. (Tr. 496). Indications from these symptoms were of daily asthma attacks and prolonged incapacitation and that the Plaintiff could only walk/stand for two hours. *Id.* The Plaintiff also complained of heart palpitations for three years and anxiety. *Id.*

*Plaintiff's Testimony, Application and Ability to Work*

In both his testimony and in his application for benefits, Plaintiff claimed that he was not able to do much yard work or housework, (Tr. 138) but that he could drive a car and went

7

shopping every two weeks. (Tr. 139). He indicated that he had problems lifting, walking, and stair climbing, but indicated no problems with sitting, standing, or reaching. (Tr. 141).

At his hearing, Plaintiff testified he stopped smoking and that he stopped using a wood burning stove the year before. (Tr. 24-26). He testified that when he used his wood-burning stove his neighbor carried the wood over to his house and stacked it in his basement; Plaintiff testified he retrieved the wood from the basement and placed it in the stove. (Tr. 26). He testified climbing stairs made him short of breath, and that he did not do dishes, laundry, and grocery shopping. (Tr. 28). He claimed he needed to lie down for one or two hours per day. (Tr. 29).

A vocational expert ("VE"), Amy Varsillo, testified at the hearing. She described the Plaintiff's past work history as an oil delivery driver and a truck driver, which she classified as medium, semi-skilled occupations. (Tr. 38). The ALJ presented the VE with the following hypothetical: An individual with the same age, educational background and past work experience as the Plaintiff, the same RFC as the Plaintiff with the following limitations, sedentary work, no climbing, no ladders, precluded from exposure to fumes, dust, smoke, chemicals and gases, avoid extreme heat, cold and humidity, and avoid all exposure to oil or oil mist.

The VE testified that the Plaintiff would not be able to perform his past relevant work within that hypothetical. Asked by the ALJ if there would be other jobs within those limitations, the VE testified that a number of gainful employment opportunities existed that the Plaintiff could engage within the sedentary labor market, in particular in office environments and clean manufacturing settings, i.e. biotechnology or electronics. (Tr. 38). These included a number of sedentary, unskilled positions, namely, clerical support (900,000 in U.S.; 5,500 in Mass.), Billing

Clerk (1.2 million in U.S.; 4,900 in Mass.), or an Electronic Inspector (500,000 in U.S.; 9,800 in Mass.). (Tr. 38-39).

The ALJ posed a second hypothetical to the VE and added to the limitations, the condition of working indoors in a climate controlled setting. The VE responded that the particular occupations that were responsive to the first hypothetical also qualified under the addition condition of being in indoors, in a climate-controlled setting because of the nature of the work in an office environment or a production facility.

*The ALJ's Findings*

The issue before the Administrative Law Judge was whether the Plaintiff was disabled under §§ 216(i) and 223(d) of the Social Security Act, defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, or combination of impairments that can be expected to result in death, or that has lasted or can be expected to last for a continuous period of not less that 12 months. (Tr. 9). In reviewing such a claim, the ALJ must use the aforementioned five-step process established in 20 C.F.R. 404.1520(a), for determining whether or not the Plaintiff is disabled. *Goodermote v. Sec'y of Health and Human Servs.*, 690 F.2d 5, 6-7 (1st Cir. 1982). The hearing consisted of witness testimony from both the Plaintiff and a vocational expert (Tr. 20-41). The ALJ found as follows:

(1) The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

(2) The claimant has not engaged in substantial gainful activity since January 18, 2006, the alleged onset date.

(3) The claimant has the following severe impairments: asthma, depression, hypertension.

(4) The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, subpart P, Appendix 1. (Tr. 11).

9

(5) The claimant has the residual capacity to perform sedentary work (as defined in 20 C.F.R. 404.1527). The claimant has the following additional limitations: lift up to 10 pounds, sit for 6 to 8 hours, walk and stand for 6 to 8 hours; no climbing, ladders, concentrated exposure to fumes, dust, smoke, chemicals, gases; avoid all exposure to oil fumes and oil mist. *Id.* at 12.

(6) The claimant is unable to perform any past relevant work.

(7) The claimant was born in 1966, and was 39 years old, which is defined as younger individual age 18-44, on the alleged disability onset date. *Id.* at 15.

(8) The claimant has at least a high school education and is able to communicate in English.

(9) Transferability of job skills is not material to the determination of disability, because using the Medical-Vocational Rules as a framework supports the finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

(10) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. *Id.* at 16.

(11) The claimant has not been under disability, as defined in the Social Security Act, from January 18, 2006. *Id.* at 17.

Following Social Security Administration's required five-step analysis, the ALJ found at the first step that the Plaintiff had not engaged in substantial gainful activity since the alleged onset date, January 18, 2006. (Tr. 11). At step two the ALJ determined that the Plaintiff had the following severe impairments: asthma, depression, and hypertension. (Tr. 11). At step three the ALJ determined that none of these impairments, either singly or in combination, met a Listing. (Tr. 11-12).

The decision made by the ALJ followed the two-step requirement to determine mental and physical impairments. (Tr. 12). First, the impairments must be shown, by medically acceptable clinical and laboratory diagnostic techniques, to reasonably be expected to produce the Plaintiff's pain or other symptoms. *Id.* Second, the ALJ must evaluate the intensity,

persistence, and limiting effects of the Plaintiff's symptoms to determine the extent to which they limit the Plaintiff's ability to do basic work activities. *Id.* The ALJ based this determination upon the credibility of the Plaintiff's statements found in the entire record. *Id* at 13. Considering the testimony and findings of Drs. Langer, Qin, Croteau, Kriedberg, Upadhyay, and Deligiannidis, the ALJ determined the impairments of the Plaintiff did not disable him to a point at which he would be eligible for benefits. *Id.* at 13-15.

Beyond the physical ailments asserted by Plaintiff, he also claims depression under the mental impairment category of *20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.04*. The ALJ ruled that the mental impairment did not result in at least two of the required categories: (i) marked difficulties in maintaining social functioning, (ii) marked restriction of activities of daily living, (iii) marked difficulties in maintaining concentration, persistence, or pace, or (iv) repeated episodes of decomposition, each of extended duration. (Tr. 11). Upon review of the medical testimony, the ALJ found that the Plaintiff's mental impairment did not qualify under the standards set forth above. *Id.* The reports of multiple mental health doctors confirmed some addition and mild depression, but no impairment that required mental health medication or facilities. (Tr. 376); *see also* Tr. 432.

An administrative law judge is responsible for determining a claimant's residual functional capacity ("RFC") based on the relevant evidence provided. *See* 20 C.F.R. § 416.945. Here, after finding Plaintiff's impairments did not meet a Listing, the ALJ determined that Plaintiff had the following RFC: sedentary work, with the following additional limitations: lift up to 10 pounds; sit for six to eight hours; stand and walk for six of eight hours; no climbing or ladders; no concentrated exposure to fumes, dust, smoke, chemicals, or gases; and must avoid all exposure to oil fumes and oil mist. (Tr. 12).

11

In making the RFC finding, the ALJ found Plaintiff's testimony not credible. (Tr. 15). Additionally, after reviewing the treatment notes from Plaintiff's treating physicians, consulting physicians, and non-examining state agency physicians, the ALJ afforded little weight to Dr. Scott's RFC assessment, and greater weight to Dr. Christiani's recommendation that Plaintiff simply avoid respiratory irritants and quit smoking. (Tr. 13-15). Based on the ALJ's RFC assessment, the ALJ found Plaintiff could not return to his past relevant work (Tr. 15), but, based on the impartial VE testimony, determined Plaintiff could perform work existing in significant numbers in the national economy. (Tr. 16).

## Discussion

I. *Court's Review of Commissioner's Decision*

Under § 205(g) of the Social Security Act, this Court may affirm, modify, or reverse the Commissioner's decision, with or without remanding the case for rehearing. 42 U.S.C. § 405(g). The Administrative Law Judge's finding on any fact shall be conclusive if it is supported by substantial evidence, and must be upheld "if a reasonable mind, reviewing the evidence as a whole in the record, could accept it as adequate to support his conclusion," even if the record could justify a different conclusion. *Rodriguez v. Sec'y of Health and Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981); see also *Evangelista v. Sec'y Health and Human Servs.*, 826 F.2d 136, 144 (1st Cir. 1987). In applying the "substantial evidence" standard, the Court must bear in mind that it is the province of the ALJ, not the court, to find facts, decide issues of credibility, draw inferences from the record, and resolve conflicts of evidence. *Irlanda Ortiz v. Sec'y of Health and Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991). Reversal is warranted only if the ALJ committed a legal or factual error in evaluating Plaintiff's claim, or if the record contains no "evidence rationally adequate...to justify the conclusions" of the ALJ. *Roman-Roman v.*

*Commissioner of Social Security*, 114 Fed. App'x. 410, 411 (1st Cir. 2004); *see also Manso-Pizarro v. Sec'y of Health and Human Servs,* 76 F. 3d. 15 (1st Cir. 1996).

II.   *Standard for Entitlement to Disability Insurance Benefits*

In order to qualify for disability insurance benefits, a claimant must demonstrate that he or she is disabled within the meaning of the Social Security Act. The Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment(s) must be severe enough to prevent the claimant from performing not only her past work, but any substantial gainful work existing in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1560(c)(1).

An applicant's impairment is evaluated under a five-step analysis set forth in the regulations promulgated under the statute. 20 C.F.R. § 404.1520. The First Circuit has described the analytical sequence as follows:

> First, is the claimant currently employed? If he is, the claimant is automatically considered not disabled.
>
> Second, does the claimant have a 'severe impairment' ... mean[ing] an impairment 'which significantly limits his or her physical or mental capacity to perform basic work-related functions[?]' If the claimant does not have an impairment of at least this degree of severity, he is automatically considered not disabled.
>
> Third, does the claimant have an impairment equivalent to a specific list of impairments contained in Appendix 1 [of the Social Security regulations]? If the claimant has an impairment of so serious a degree of severity, the claimant is automatically found disabled .... If, however, his ability to perform basic work-related functions is impaired significantly (test 2) but there is no 'Appendix 1' impairment (test 3), the [ALJ] goes on to ask the fourth question:
>
> Fourth, does the claimant's impairment prevent him from performing work of the sort he has done in the past? If not, he is not disabled. If so, the agency asks the fifth question.

Fifth, does the claimant's impairment prevent him from performing other work of the sort found in the economy? If so, he is disabled; if not, he is not disabled.

*Goodermote,* 690 F.2d at 6–7.

The burden of proof is on the applicant as to the first four steps of the analysis. *See* 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the [ALJ] may require."). At the fifth step of the analysis, the burden shifts to the Commissioner to show that the claimant is capable of performing jobs available in the national economy. *Freeman v. Barnhart,* 274 F.3d 606, 608 (1st Cir. 2001). In making that determination, the ALJ must assess the claimant's RFC in combination with vocational factors, including the claimant's age, education, and work experience. 20 C.F.R. § 404.1560(c).

III. *Whether the Commissioner's Decision Should be Affirmed*

Plaintiff argues that: 1) the ALJ improperly found the Plaintiff did not meet or medically equal any impairment in the Listing of Impairments found in 20 C.F.R. Part 404, subpart P, Appendix 1; 2) the ALJ failed to assess all relevant credibility factors in regards to the testimony of the Plaintiff; 3) the ALJ improperly did not give controlling weight to the decision of Dr. Scott about the Plaintiff's disability; 4) the ALJ failed to consider the combination of the Plaintiff's depression and respiratory impairments; 5) Plaintiff argues that the ALJ presented an inaccurate hypothetical to the Vocational Expert. In response, the Commissioner asserts that the record supports the ALJ's findings and the decision is supported by substantial evidence. The Court's standard of review is not whether the record evidence could support a particular finding, but whether substantial evidence exists to support the ALJ's findings. *See Roman-Roman v. Commissioner of Social Security,* 114 Fed. App'x. 410, 411 (1st Cir. 2004). With this standard at the forefront, the Court will review the ALJ's findings.

Plaintiff's primary argument is that the ALJ improperly found Plaintiff did not meet or medically equal any respiratory impairment in the Listing of Impairments found in 20 C.F.R. Part 404 Subpart P, Appendix 1. Plaintiff asserts his pulmonary disorder in light of his "chronic asthmatic bronchitis" and recurring asthma attacks met or medically equaled Listing 3.00. Furthermore, Plaintiff argues that the ALJ failed to discuss or explain in any part of the decision the finding that he did not suffer from a respiratory listing level impairment. The Commissioner argues that the actual requirements set forth in the Listing for a respiratory impairment reveals Plaintiff's respiratory condition neither met nor medically equaled those requirements., but cannot point to where the ALJ had done so in his decision. For the reasons set forth below, I agree with the Plaintiff.

The ALJ determined at step 2 in the evaluation that Plaintiff had several severe impairments, including asthma. Asthma is one of the ailments categorized as a respiratory system impairment. *See* 20 C.F.R. Part 404 Subpart P, 3.00, 3.03, Asthma:

> **3.03** *Asthma*. With:
>
> A. Chronic asthmatic bronchitis. Evaluate under the criteria for chronic obstructive pulmonary disease in 3.02A[3];
>
> or
>
> B. Attacks (as defined in 3.00C)[4], in spite of prescribed treatment and requiring physician intervention, occurring at least once every 2 months or at least six times a year. Each in-

---

[3] **3.02 Chronic pulmonary insufficiency A.** Chronic obstructive pulmonary disease due to any cause, with the $FEV_1$ equal to or less than the values specified in table I corresponding to the person's height without shoes. (table data omitted). 20 C.F.R. Part 404 Subpart P.

[4] 3.00 Attacks of asthma, episodes of bronchitis or pneumonia or hemoptysis (more than blood-streaked sputum), or respiratory failure as referred to in paragraph B of 3.03, 3.04, and 3.07, are defined as prolonged symptomatic episodes lasting one or more days and requiring intensive treatment, such as intravenous bronchodilator or antibiotic administration or prolonged inhalational bronchodilator therapy in a hospital, emergency room or equivalent setting.

patient hospitalization for longer than 24 hours for control of asthma counts as two attacks, and an evaluation period of at least 12 consecutive months must be used to determine the frequency of attacks.

*Section 3.03*

The list of respiratory impairments provides for equivalency, which, based on the record, would merit some discussion by the ALJ beyond a conclusory statement that the listing was not met:

> […] When an individual has a medically determinable impairment that is not listed, an impairment which does not meet a listing, or a combination of impairments no one of which meets a listing, we will consider whether the individual's impairment or combination of impairments is medically equivalent in severity to a listed impairment. […]

*Section 3.00*

The Commissioner correctly points out that that a Listing is met by the actual objective medical evidence from record, rather than a physician's subjective opinions. *See* SSR 96-5p 1996 WL 374183, at *3 (July 2, 1996). "In most instances, the requirements of listed impairments are objective, and whether an individual's impairment manifests these requirements is simply a matter of documentation." While the burden is on the Plaintiff at this step to put forth evidence of an impairment, the ALJ must provide some analysis of that evidence in making the Listing determination in order for there to be meaningful review and consideration of the findings.

The Court recognizes that the failure of the ALJ to make specific findings as to whether a claimant's impairment meets the requirements of a listed impairment is an insufficient reason solely for setting aside an administrative finding. *See Senne v. Apfel,* 198 F. 3d 1065, 1067

---

Hospital admissions are defined as inpatient hospitalizations for longer than 24 hours. The medical evidence must also include information documenting adherence to a prescribed regimen of treatment as well as a description of physical signs. For asthma, the medical evidence should include spirometric results obtained between attacks that document the presence of baseline airflow obstruction. 20 C.F.R. Part 404 Subpart P, 3.00

(8th Cir. 1999); s*ee also Scheck v. Barnhart,* 357 F.3d 697, 701 (7th Cir. 2004) ("It was unnecessary for the ALJ to articulate her reasons for accepting the state agency physicians' determination [that the claimant met the listing]."). Rather, the focus must be on whether there exists substantial evidence in the decision as a whole for the step three determination. *See Reyes Robles v. Finch,* 409 F.2d 84, 86 (1st Cir.1969); *cf. Rivera v. Barnhart*, Civ. Act. No. 04-30131-KPN (March 14, 2005) (where Plaintiff failed to prove that his impairments met the severity requirements for the particular listing where substantial evidence was shown).

Taking a broad approach, and considering the decision as a whole, *cf. Orlando v. Heckler,* 776 F.2d 209, 213 (7th Cir.1985) (refusing to require an ALJ to lay out his determinations and supporting reasoning in a "conclusion" section, as opposed to a "discussion" section, and calling any such requirement a "needless formality"), I find no analysis of the evidence or any factual findings or comparative language that discusses how the Plaintiff's treatments, tests or episodes are different – or less severe – than that which is considered in the Listing for asthma. Without such a basis, I am unable to ascertain on this record whether the ALJ's finding that the Plaintiff's asthma condition did not meet the Listing requirements for a respiratory listing level impairment was supported by substantial evidence. It is, therefore, beyond judicial review, *see Clifton v. Chater*, 79 F.3d 1007 (10th Cir. 1996) and must be remanded so that the ALJ can more fully develop the record in greater detail with regard to the requirements of Listing 3.00.

Because the matter is remanded with regard to the listing level impairments at Step 3, it is not necessary for the Court to address Plaintiff's additional arguments.

*Conclusion*

For the foregoing reasons, the Motion for an Order Affirming the Decision of the Commissioner (Docket No. 17) is **denied** and the matter is remanded to the ALJ for further proceedings consistent with this decision.

/s/ Timothy S. Hillman
TIMOTHY S. HILLMAN
U.S. MAGISTRATE JUDGE